# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| **MURLIN R. PHILLIPS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:03 CV 109 LMB |
| | ) | |
| **LARRY PLUNKETT, SR.,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the court on the Complaint of plaintiff Murlin Phillips on his civil rights action pursuant to 42 U.S.C. § 1983 against Defendant Larry Plunkett, Sr. This case has been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice Reform Act and is being heard by consent of the parties. See 28 U.S.C. § 636(c).

Several documents are currently pending before the court. As an initial matter, the court notes that plaintiff has filed a "Motion for Leave to File Case Law Asking for Judicial Notice that Cigerette [sic] Smoke is Highly Dangerous," in which he requests that the court take notice of the decision De Jesus Rivera v. R.J. Reynolds Tobacco Co., 368 F. Supp.2d 148 (D. Puerto Rico 2005). (Doc. No. 36). The court will grant plaintiff's motion and take notice of this decision.

Plaintiff has also filed a "Motion for Protective Order and Requesting Experts be Appointed FRE Rule 706" (Documents Number 32), and "Petitions for Writs of Habeas Corpus Ad Testificandum." (Doc. No. 34). Defendant has filed a Motion for Summary Judgment, along with a Memorandum in Support of that motion. (Docs. No. 38, 39). With respect to defendant's

Motion for Summary Judgment, plaintiff has filed "Plaintiff's Opposition to Moition [sic] for Summary Judgment Requesting Cross Summary Judgment," and "Plaintiff's Amended Opposition to Moition [sic] for Summary Judgment Requesting Cross Summary Judgment," and defendant has filed a Reply. (Docs. No. 42, 43, 45). In addition, plaintiff has filed a "Request for Sanctions and for Protective Order against Fraud on the Court by Defendant and his Counsel and to Appoint Plaintiff Experts," and an "Amended Request for Sanctions and for Protective Order against Fraud in the Court by Defendant and his Counsel and to Appoint Plaintiff Experts," to which defendant has filed a Response. (Docs. No. 49, 50, 53). Finally, plaintiff has filed a "Motion for Reconsideration and for Clarification of Court Order Requesting Assistance from the Court." (Doc. No. 52).

## **Background**

In his Complaint, filed pro se, plaintiff alleges that defendant violated his Eighth and Fourteenth Amendment rights under the United States Constitution. Plaintiff states that he was in the custody of the Wayne County Sheriff's department from October 9, 2000 until May 10, 2002, and that he was held in the Butler County Jail for approximately four months of this time. Plaintiff claims that while in the Wayne County Jail, he was housed with cigarette smokers and he was forced to breathe second-hand smoke. Plaintiff alleges that there was no ventilation in the large cells, and the smaller cells had windows, but the windows could not be opened in the winter due to inadequate heat, and the fresh air was overwhelmed by smoke. Plaintiff states that he was under the medical care of the United States Veteran's Administration for respiratory problems.

Plaintiff claims that he complained to defendant and his deputies by sending letters, submitting Grievance forms, and complaining orally, yet he received no response to any of his

written complaints and defendant's deputies laughed at his oral complaints. Plaintiff alleges that defendant showed deliberate indifference to the hazard of Environmental Tobacco Smoke (ETS) exposure by ignoring his letters and grievances and by continuing to sell tobacco in the jail. Plaintiff requests that the court issue a declaratory judgment stating that defendant violated plaintiff's Eighth and Fourteenth Amendment rights when he subjected plaintiff to ETS for approximately fourteen months. Plaintiff also requests compensatory damages in the amount of $1,000,000.00 for future health problems, punitive damages in the amount of $500,000.00, and actual damages in the amount of $250,000.00.

## **Discussion**

As previously stated, there are several motions pending before the court. The undersigned will first discuss plaintiff's motion for reconsideration of the court's denial of his motion to compel. The undersigned will next discuss defendant's Motion for Summary Judgment and the motions filed in relation to such.

### **I. Plaintiff's Motion for Reconsideration**

Plaintiff and defendant each filed motions to compel in this matter. (Docs. No. 22, 25). In defendant's motion to compel, he requested that the court order plaintiff to respond to defendant's interrogatories and request for production of documents. Defendant informed the court that plaintiff's responses to discovery were overdue, and that defendant had attempted in good faith to resolve the discovery dispute. Plaintiff, in his motion to compel, argued that defendant failed to provide the following information in his interrogatories: the names of all prisoners confined in the Wayne County Jail from October 9, 2000 to May 10, 2002; the names, addresses, and telephone numbers of all deputy sheriffs and jail employees of the Wayne County Jail employed during the

period of October 9, 2000 to May 10, 2002; the visitation log for all prisoner visits from October 9, 2000 to May 10, 2002; and the transportation logs and Radio Dispatch Logs for the Wayne County Sheriff's Department from October 9, 2000 to May 10, 2002. In an Order dated September 14, 2005, the court granted defendant's motion to compel and denied plaintiff's motion to compel. (Doc. No. 47). The court found that plaintiff's requests were too broad, irrelevant, or were violative of other individuals' privacy.

In his motion to reconsider, plaintiff states that he does not understand why the court would grant defendant's motion to compel discovery and deny plaintiff's motion to compel. He requests that the court grant his motion to compel and order defendant to provide the requested information. Defendant has not responded to plaintiff's motion to reconsider.

Although the Federal Rules of Civil Procedure do not mention motions for reconsideration, the Eighth Circuit Court of Appeals has held that when the motion is made in response to a non-final order, which is the case here, Rule 60(b) applies. See Broadway v. Norris, 193 F.3d 987, 989 (8th Cir. 1999). Rule 60(b) allows a party to seek relief from a final judgment or an order if the party can prove mistake, inadvertence, surprise, excusable neglect, fraud, the judgment is void, or for "any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b). Such relief, however, is an "extraordinary remedy" that is only justified by "exceptional circumstances." Watkins v. Lundell, 169 F.3d 540, 544 (8th Cir. 1999). Further, Rule 60(b) is "not a vehicle for simple reargument on the merits." Broadway, 193 F.3d at 990. Thus, a motion to reconsider pursuant to Rule 60(b) is properly denied for example, where the movant "d[oes] nothing more than reargue, somewhat more fully, the merits of their claim." Id. at 989-990.

In this case, the court finds that plaintiff's argument lacks merit. Plaintiff does not

cite any of the enumerated circumstances justifying relief from the court's order denying his motion to compel. Plaintiff claims that the court erred in granting defendant's motion to compel discovery yet denying plaintiff's similar motion to compel discovery. The court, however, explained in its order that plaintiff's discovery requests were too broad, irrelevant, or were violative of other individuals' privacy, while the information defendant requested was either related directly to the subject matter of the action or was reasonably calculated to lead to the discovery of admissible evidence. Thus, the court will deny plaintiff's motion to reconsider its order denying plaintiff's motion to compel.

**II.     Defendant's Motion for Summary Judgment**

In support of his Motion for Summary Judgment, defendant argues that plaintiff has failed to show deliberate indifference and that he has failed to show that he had a serious medical need. Defendant further argues that Defendant Plunkett may not be held liable under a theory of respondeat superior for any alleged constitutional violations of his subordinates, and that plaintiff cannot establish that Defendant Plunkett caused the alleged unconstitutional treatment plaintiff received.

In his Response, plaintiff states that it is common sense that plaintiff suffered damage from tobacco smoke while confined at the Wayne County Jail, and that defendant had knowledge of the damage suffered by plaintiff as a result of the tobacco smoke. Plaintiff claims that there are material issues of fact in dispute in this case. Plaintiff alleges that defendant fabricated some of the documents filed in support of his motion for summary judgment. Finally, plaintiff states that he has been diagnosed with cancer in his neck and that this condition was caused by his confinement in the Wayne County Jail. Plaintiff has attached as exhibits his own affidavit, along with a diagram of

the Wayne County Jail, his medical records, his records from the Wayne County Jail, and an American Cancer Society article regarding secondhand smoke.

In his Reply, defendant argues that plaintiff has failed to establish that he had a serious medical need either caused by exposure to ETS or aggravated by exposure to ETS. Defendant further argues that plaintiff has failed to come forth with any evidence that defendant knew of a substantial risk of harm to plaintiff and disregarded that risk. Defendant also contends that plaintiff has failed to establish that defendant had notice and knowledge about the alleged unconstitutional conduct or that defendant turned a blind eye to it.

As noted above, plaintiff alleges that defendant has committed fraud and that defendant has fabricated documents filed in support of his Motion for Summary Judgment. Plaintiff has filed an Amended Request for Sanctions and for a Protective Order Against Fraud on the Court by Defendant and His Counsel. (Doc. No. 50). After reviewing defendant's Motion for Summary Judgment, along with the documents filed in support of that motion, the court finds no evidence of fraud. Thus, the court will deny plaintiff's motion for sanctions.

**A.     Factual Background[1]**

Viewed in the light most favorable to the plaintiff, the record reveals the following facts. Defendant Larry Plunkett, Sr. was the Sheriff of Wayne County, Missouri in the year 2000, 2001, and 2002. Plaintiff Murlin Phillips was in the custody of the Wayne County Sheriffs's Department from October 9, 2000 until May 10, 2002. During that time, plaintiff was housed at the Butler County Jail from October 9, 2000 until December 12, 2000, from January 4, 2001 until March 2,

---

[1] The court's recitation of the facts it taken from defendant's Statement of Uncontroverted Facts. The court has noted any disputes as they are set forth in the briefs.

2001, from May 9, 2001 until May 14, 2001, and from May 21, 2001 until June 29, 2001. During the time that plaintiff was incarcerated at the Wayne County Jail, smoking was permitted by inmates in their respective cells. During the time plaintiff was incarcerated in the Wayne County Jail, defendant had no knowledge that plaintiff presented any grievances or complaints to jailers or deputy sheriffs about being housed with smokers or being exposed to second hand cigarette smoke.² Defendant had no knowledge that plaintiff was being housed at the Wayne County Jail with smokers.³ During the time plaintiff was incarcerated at the Wayne County Jail, defendant had implemented a policy establishing that non-smokers, upon their request, would be housed in a designated non-smoking cell at the Wayne County Jail, which was separated from smoking cells by a hallway, a steel door, and a booking room.⁴ Plaintiff never made any requests to defendant that he be placed in the designated non-smoking cell at any time during his incarceration at the Wayne County Jail.⁵ Defendant was not personally involved in making any decisions regarding the placement of plaintiff in a specific cell, and defendant has no knowledge of any violation of the

---

²Plaintiff objects to this fact and claims that defendant "knew of [plaintiff's] condition and that [plaintiff] repeatedly complained and was at the hospital repeatedly." Affidavit of Murlin Phillips at ¶ 19.

³Plaintiff objects to this fact by stating that defendant's claim that he had no knowledge of the conditions in which plaintiff lived was "down right false." Affidavit of Murlin Phillips at ¶ 2.

⁴Plaintiff objects to this fact by stating that "there never was any section of the jail designated as smoking area or smoking unit. Further, the so-called rules and policies filed by defendant in this suit were non-existent." Affidavit of Murlin Phillips at ¶ 8. He also states that "[t]here never was any notice of the board designating smoking off limits. [Plaintiff] had to breath the smoke in the day and when he slept." Id. at ¶ 9.

⁵Plaintiff objects to this fact by stating that he signed a document when he entered the Wayne County Jail, which described his condition and stated that he was a non-smoker and had medical problems. See Affidavit of Murlin Phillips at ¶ 2. Plaintiff also denied that a non-smoking cell existed. See id. at ¶¶ 8, 9.

policy at the Wayne County Jail requiring any non-smoking prisoner to be placed in the designated non-smoking cell upon the prisoner's request.[6]

Defendant had no knowledge that plaintiff either suffered from any respiratory problems at the Wayne County Jail during his incarceration, or suffered from any serious illness or medical condition caused by exposure to cigarette smoke during his incarnation at the Wayne County Jail.[7] Defendant had no knowledge that plaintiff was exposed to second hand cigarette smoke at the Wayne County Jail that aggravated or exacerbated any respiratory problems or any serious medical condition of plaintiff during his incarceration at the Wayne County Jail.[8] Defendant had knowledge that plaintiff was being treated by a doctor at the Veterans Administration during his incarceration at the Wayne County Jail because deputy sheriffs transported plaintiff to the Veterans Administration for treatment during his incarceration.

The medical problems claimed by plaintiff to be caused by exposure to second-hand

---

[6] Plaintiff does not directly object to this fact, but maintains that he was told that "the sheriff runs the jail-it is his decision how [plaintiff] gets treated-his decision and his decision alone." Affidavit of Murlin Phillips at ¶ 7.

[7] Plaintiff objects to this fact by stating it is "down right false. [Plaintiff] signed a document when he entered the jail, which described his condition (Ex. A). This document clearly shows the defendant that the plaintiff...has medical problems." Affidavit of Murlin Phillips at ¶ 2. He further states that he had a "serious medical condition (See Medical files) and the sheriff knew this-[plaintiff] could not leave the jail to [go to] the hospital without approval; and knowledge of the sheriff." Affidavit of Murlin Phillips at ¶ 11. See id. at ¶ 19. Plaintiff also claims that his condition "was published into the jail records and into the hospital records showing that [plaintiff] had serious conditions, that he was coughing all the time." Affidavit of Murlin Phillips at ¶ 18.

[8] Plaintiff objects to this fact by stating that defendant "knew of this condition and that the [plaintiff[ repeatedly complained and was at the hospital repeatedly. [Plaintiff] could not leave the jail without the sheriff approving it and as such, the sheriff knew of this medical condition." Affidavit of Murlin Phillips at ¶ 19.

smoking the Wayne County Jail are "just coughing and my sinuses and stuff."[9] Deposition of Murlin R. Phillips, p. 30, line 17. Plaintiff admitted that he did not know whether he had any long-term damages caused by smoking at the Wayne County Jail. Id. at p. 33, lines 17-19. No doctor has ever told plaintiff that he was suffering from any damages as a result of excess smoke in the Wayne County Jail during his incarceration. See id. at p. 34, lines 3-6. Plaintiff received care and treatment form the John J. Pershing Medical Facility, Veterans Administration, while he was in the Wayne County Jail. See id. at p. 39, lines 13-18. Plaintiff has never seen a doctor specifically in reference to any damages as a result of inhalation of smoke during the time he was incarcerated at the Wayne County Jail. See id. at p. 39, lines 12-18. No doctor has ever told plaintiff that he will suffer any future damages caused by inhalation of smoke during the time he was incarcerated at the Wayne County Jail. See id. at p.56, lines 24-25. No doctor has ever told plaintiff that he has a higher risk for contracting lung cancer. See id. at p. 57, lines 12-14. No doctor has ever told plaintiff that he has suffered any actual damages as a result of inhalation of smoke while at the Wayne Count Jail. See id. at p. 58, lines 3-6. Plaintiff has not been examined by any doctor concerning any injuries that he claims he suffered as a result of cruel and unusual punishment occurring in the Wayne County Jail during his incarceration. See id. at p. 59, lines 14-17. The only treatment plaintiff received was at the Veterans Administration Hospital, which began before his incarceration at the Wayne County Jail. See id. at p. 67, lines 19-25; page 678, lines 1-5.

The medical records reveal that plaintiff was evaluated at the Veterans Hospital on April

---

[9]Plaintiff claims in his amended response in opposition to defendant's motion for summary judgment that he has been diagnosed with a cancerous tumor in his neck, which he attributes to the conditions at the Wayne County Jail. See Doc. No. 43 at 4. However, plaintiff did not plead this in his Complaint and produces no evidence of such a diagnosis.

26, 2000, at which time he complained of a "dry cough since 2/99." Def's Ex. 4. Doctors found that plaintiff had a cough, possibly secondary to post-nasal drip, and prescribed Allegra.[10] See id.

On May 3, 2000, plaintiff reported to his doctors that he had been examined by an ear, nose, and throat doctor who thought his symptoms were related to post-nasal drip. See id.

On July 19, 2000, plaintiff was again evaluated for a chronic cough, which doctors found was probably related to allergic symptoms. See id.

On July 24, 2000, plaintiff was examined for complaints of "cough." See id. He was evaluated by the Pulmonary Department, and no pulmonary etiology was found for the cough. See id. The impression by the doctor at the time was a persistent cough secondary to post-nasal drip. See id. Plaintiff was prescribed Allegra for the cough. See id.

On October 31, 2000, plaintiff was escorted to a medical exam by police officers for an evaluation by his doctors. See id. Plaintiff complained of a "chronic cough," and his doctors found the cough was probably related to allergies. See id.

On December 4, 2000, plaintiff complained of a chronic cough which had previously been evaluated by the Pulmonary Department of the Veterans Hospital. See id. Plaintiff was again referred to the Pulmonary Department for evaluation. See id.

On December 20, 2000, plaintiff was evaluated by the Pulmonary Department of the Veterans Hospital. See id. It was noted that plaintiff complained of a persistently "raw throat," which had continued despite trials with multiple medications. See id. A CT scan was taken of plaintiff's chest, which was found to be normal. See id. The doctor noted that plaintiff

---

[10]Allegra is indicated for the relief of symptoms associated with seasonal allergic rhinitis. See Physician's Desk Reference (PDR), 677 (59th Ed. 2005).

continued to have post-nasal drip, and that his coughing appeared to be worse at night. See id. The doctor found that plaintiff's lungs were clear. See id. No significant change in pulmonary function was found. See id. The doctor noted that plaintiff still had post-nasal drip, which may be associated with his coughing. See id.

On October 16, 2001, plaintiff complained of a "mild cough" with post-nasal drip. See id. Plaintiff's doctors noted that plaintiff had a chronic problem, and has been evaluated by the St. Louis Pulmonary Department. See id. The doctor's impression was an occasional intermittent cough, probably secondary to allergic rhinitis. See id. The doctor advised plaintiff to continue with his medications, which included Sudafed and nasal sprays. See id.

Plaintiff was evaluated by his doctor for complaints of post-nasal drip and some stuffiness of his nose on December 13, 2001. See id. The doctor's impression was allergic rhinitis. See id. The doctor continued plaintiff's prescriptions for Allegra and nasal spray. See id.

On December 19, 2001, plaintiff complained of a raw feeling in his chest and a chronic mild cough. See id. Plaintiff told the doctor that he noticed the cough three years ago. See id. Plaintiff stated that the cough was made worse by smoke and by leaning up against a cold wall with his back. See id. Plaintiff reported that his cough is better when he lies down and takes cough syrup. See id. Plaintiff stated that the cough comes and goes, and that there are days when the cough is not there, and days when it is very bad. See id. Plaintiff further stated that he feels like he must clear his throat all the time and that his cough is not serious enough to awake him from sleep. See id. The doctors examined plaintiff and found no lesions that might be causing his problems. See id.

**B.     Standard of Review**

A court may grant summary judgment when no issue of material fact exists and the moving party is entitled to judgment as a matter of law, according to Federal Rule of Civil Procedure 56 (c). A fact is material only when its resolution affects the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252, 106 S. Ct. at 2512. In deciding a motion for summary judgment, the court must review the facts and all reasonable inferences in a light most favorable to the nonmoving party. See Canada v. Union Elec. Co., 135 F.3d 1211, 1212 (8th Cir. 1997).

In a motion for summary judgment, the movant bears the initial burden of proving the absence of any genuine issue of material fact that would preclude judgment for the movant. See City of Mt. Pleasant, Iowa v. Associated Elec. Co-op, Inc., 838 F.2d 268, 273 (8th Cir. 1988). Once the movant has met this burden, the non-movant may not rely on mere denials or bare allegations, but must point to specific facts that raise a triable issue. See Anderson, 477 U.S. at 249, 106 S. Ct. at 2510-2511. The non-movant must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of material fact for trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The Supreme Court has found that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Id. at 327, 106 S.Ct. at 2555 (quoting Fed. R. Civ. P. 1).

Plaintiff has brought the instant action pursuant to 42 U.S.C. § 1983, claiming violations

of his rights under the Eighth and Fourteenth Amendment rights under the United States Constitution "To state a claim under section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States . . ." West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 2255-56, 101 L.Ed.2d 40 (1988). Thus, to be entitled to relief under 42 U.S.C. § 1983, a plaintiff must show that: (1) a person (2) acting under color of state law (3) subjected the plaintiff or caused the plaintiff to be subjected (4) to the deprivation of a right secured by the Constitution or laws of the United States. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 829, 105 S.Ct. 2427, 2439, 85 L.Ed.2d 791 (1985); Shrum ex rel. Kelly v. Kluck, 249 F.3d 773, 777 (8th Cir. 2001).

**C.    Deliberate Indifference**

Plaintiff claims that defendant showed deliberate indifference to the hazards of ETS by ignoring his letters and grievances, and by continuing to sell tobacco in his jail. Specifically, plaintiff alleges that "[d]ue to Defendant's negligence, he has violated Plaintiff's 8th Amendment Rights to be Free from Cruel and Unusual Punishment, and Plaintiff's 14th Amendment Right of Equal Protection of the Law, and the Due Process Clause, all guaranteed him by the United States Constitution." (Doc. No. 1 at Attachment p. 4).

Since plaintiff was a pretrial detainee at the time of his complaints, his claims of medical indifference are analyzed as Fourteenth Amendment due process claims. The standards governing such claims were established in Davis v. Hall, 992 F.2d 151 (8th Cir. 1993). The Davis court adopted the Eighth Amendment deliberate indifference standard for due process claims asserted by pretrial detainees. Id. at 152-153. See also Whitnack v. Douglas County, 16 F.3d 954, 957 (8th Cir. 1994) (applying Eighth Amendment standard for pretrial detainee's conditions of confinement

claim); Tooley v. Boyd, 936 F. Supp. 686, 690 n. 5 (E.D. Mo. 1996) (recognizing that deliberate indifference is proper standard for pretrial detainees). Thus, plaintiff's claims of indifference to his exposure to ETS are properly analyzed under the deliberate indifference standard.

The deliberate indifference test involves both an objective and subjective component. See Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). To establish deliberate indifference in the denial of medical care, a plaintiff must demonstrate: (1) that she "suffered objectively serious medical needs" and (2) that the prison official "actually knew of but deliberately disregarded those needs." Id. "[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996). However, negligence is insufficient to rise to a constitutional violation. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). "The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Estate of Rosenberg by Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). In this context, a prison official violates the Eighth Amendment by being deliberately indifferent either to a prisoner's existing medical needs or to conditions posing a substantial risk of serious future harm. See Estelle, 429 U.S. at 104, 97 S.Ct. at 291 (existing medical needs); Helling v. McKinney, 509 U.S. 25, 35, 113 S.Ct. 2475, 2481, 125 L.Ed.2d 22 (1993) (risk of future harm to health).

To prevail on his claim for present injuries sustained as a result of exposure to ETS, plaintiff must first show that he suffered from a serious medical need. A serious medical need is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that

even a layperson would easily recognize the necessity for a doctor's attention." Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997). Plaintiff has failed to present evidence that he was suffering from a serious medical need caused by exposure to ETS while he was incarcerated at the Wayne County Jail.

Plaintiff's medical records reveal that plaintiff was evaluated for a cough by doctors at the Veterans Administration Hospital prior to his incarceration at the Wayne County Jail. Plaintiff was treated on several occasions for this cough beginning in February of 1999. On April 26, 2000, plaintiff complained of a "dry cough since 2/99," to his doctors at the Veterans Hospital. At that time, his doctors found that plaintiff had a cough that was possibly secondary to post-nasal drip. On July 19, 2000, plaintiff again complained of a chronic cough. His doctors found that the cough was probably related to allergic symptoms. Plaintiff was examined for his cough again on July 24, 2000. He was evaluated by doctors in the Pulmonary Department, who found no pulmonary etiology for the cough. The impression of plaintiff's doctors at the time was a persistent cough secondary to post-nasal drip.

Plaintiff continued to complain of a cough after he was incarcerated at the Wayne County Jail. On October 31, 2000, plaintiff was evaluated for complaints of a chronic cough, and his doctors found that the cough was probably related to allergies. Plaintiff complained of a chronic cough on December 4, 2000, and was referred to the Pulmonary Department for another evaluation. A CT scan revealed no abnormalities. Plaintiff's doctor found that plaintiff's lungs were clear, and no significant change in pulmonary function was found. The doctor concluded that plaintiff still had post-nasal drip, which may be associated with his coughing. Plaintiff complained of a mild cough again on October 16, 2001, at which time his doctor's impression was an

occasional intermittent cough, probably secondary to allergic rhinitis. On December 13, 2001, plaintiff complained of post-nasal drip and some stuffiness. The doctor's impression was allergic rhinitis. Finally, on December 19, 2001, plaintiff complained of a raw feeling in his chest and a chronic mild cough, which had been present for three years. Plaintiff's doctors examined plaintiff and found no lesions that might be causing these problems.

The medical records show that plaintiff was never diagnosed with a serious medical condition. Rather, plaintiff merely complained of a mild cough that had been present prior to his incarceration, which his doctors attributed to allergies. Complaints of breathing problems, chest pains, dizziness, sinus problems, headaches, and a loss of energy have been found to be "objectively speaking, relatively minor," and insufficient to establish a constitutional violation. See Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999). Plaintiff's doctors never expressed the opinion that plaintiff's cough was caused by or was aggravated by exposure to ETS at the Wayne County Jail. Likewise, plaintiff's doctors never stated that plaintiff's condition necessitated a smoke-free environment. Plaintiff admitted in his deposition that no doctor has ever told him that he suffered any damages as a result of exposure to smoke in the Wayne County Jail. Thus, plaintiff has failed to demonstrate that he suffered from a serious medical need caused by exposure to ETS during his incarceration at the Wayne County Jail. Having established that plaintiff failed to satisfy the objective element of an Eighth Amendment claim, the undersigned need not address the subjective element.

Further, plaintiff is unable to show that defendant was deliberately indifferent to conditions posing a substantial risk of serious future harm. In Helling v. McKinney, 509 U.S. 25, 35, 113 S.Ct. 2475, 2481, 125 L.Ed.2d 22 (1993), the United States Supreme Court held that a prisoner

could state a cause of action under the Eighth Amendment by alleging that prison officials had exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health. The plaintiff must prove both objective and subjective elements of an Eighth Amendment claim. See id. "With respect to the objective factor, [the plaintiff] must show that he himself is being exposed to unreasonably high levels of ETS." Id. at 35, 113 S.Ct. at 2482. The Court stated that "determining whether [the plaintiff's] conditions of confinement violate the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." Id. at 36; 113 S.Ct. at 2482. (emphasis in original).

The undersigned notes that plaintiff is no longer incarcerated at the Wayne County Jail. As such, the possibility of obtaining injunctive relief in this matter is moot, as the defendant is no longer plaintiff's custodian. In Helling, the Supreme Court focused on a prisoner's ability to obtain injunctive relief based upon the risk of future injury. The Court did not, however, specifically address the issue of whether a prisoner may recover monetary damages based upon the risk of future injury. However, based upon the principles set forth in Helling, plaintiff's claim for monetary damages based upon the risk of future harm due to ETS exposure fails.

Plaintiff has failed to show that he was exposed to unreasonably high levels of ETS at the Wayne County Jail. Plaintiff alleges that he was housed with smokers during his confinement at the Wayne County Jail. Plaintiff's allegations, however, are insufficient to meet his burden under Helling to put forth objective evidence of his exposure to ETS. Plaintiff has not presented any

scientific evidence concerning the levels of ETS to which he was exposed. See Larson v. Kempker, 414 F.3d 936, 940 (8th Cir. 2005). In Larson, the Eighth Circuit affirmed the district court's decision granting summary judgment to the defendant, finding that the plaintiff failed to put forth objective evidence that he was subjected to unreasonably high levels of ETS. The Court noted that plaintiff's expert performed no scientific tests to establish the levels of ETS in plaintiff's cell, and plaintiff failed to present "any other reliable basis to estimate the levels of ETS to which he is exposed." Id.

Further, plaintiff has failed to present evidence showing how his exposure to ETS would affect his future health. Plaintiff has produced no expert medical testimony to establish that he faces an increased risk of developing a serious medical condition or that the risk was caused by exposure to ETS while he was confined at the Wayne County Jail. In fact, plaintiff admits that no doctor told him that he will suffer any future damages due to his exposure to ETS while confined at the Wayne County Jail. Further, plaintiff admitted that no doctor has told him that he suffered any actual damages caused by ETS exposure or that he is at a higher risk for contracting lung cancer. As such, the evidence is insufficient to establish plaintiff was subject to an unreasonable risk of harm from his exposure to ETS.

The court finds that there is no genuine issue of material fact that Defendant Larry Plunkett, Sr. did not show deliberate indifference to the hazards of ETS exposure.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's "Motion for Leave to File Case Law Asking for Judicial Notice that Cigerette [sic] Smoke is Highly Dangerous," (Doc. No. 36) be and it is **granted**.

**IT IS FURTHER ORDERED** that plaintiff's "Motion for Reconsideration and for Clarification of Court Order Requesting Assistance from the Court" (Doc. No. 52) be and it is **denied.**

**IT IS FURTHER ORDERED** that plaintiff's "Amended Request for Sanctions and for Protective Order against Fraud in the Court by Defendant and his Counsel and to Appoint Plaintiff Experts" (Doc. No. 50) be and it is **denied.**

**IT IS FURTHER ORDERED** that defendant's Motion for Summary Judgment (Doc. No. 38) be and it is **granted.** A separate Summary Judgment will be entered on this date.

**IT IS FURTHER ORDERED** that all other pending motions be **denied as moot.**

Dated this 27th day of March, 2006.

LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE